Case number 21-5045, Damien Guedes, et al., appellant, Firearms Policy Coalition, Inc., CA 18-3083, v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, et al., Mr. Jaffe for the appellant, Mr. Stern for the appellant. Good morning, counsel. Mr. Jaffe, please proceed when you're ready. Good morning, Mr. Chief Judge, and may it please the court. As said, I'm Mr. Jaffe. I represent the appellants, and this case can be dealt with in one of two ways. One, we can just go straight to statutory interpretation. I believe this court has already held that the statute at issue here is ambiguous, and while it has posited that ATF's interpretation of that statute is permissible, neither this court nor the court below has held that it is the best interpretation. We would actually argue that it is perhaps the worst interpretation, but certainly not the best interpretation. If the court wants to engage in that discussion rather than just assume that for purposes of what's already been decided, we can then go on to discuss what to do about Chevron. Obviously, this court has ruled on that in the preliminary injunction context, and we have made arguments as to why Chevron should not apply, why the rule of lenity should apply, and why even if they theoretically could go differently, the government has affirmatively waived reliance on Chevron beverage. However, I understand that the court has in fact issued an opinion on that, and if you disagree with my arguments as to why that opinion hasn't opened up again based on cases like Holly Frontier, based on Justice Gorsuch's statement respecting the denial of certs, and based on other actions of other courts going en banc, highly divided en bancs, even if they don't resolve it in the way that I would prefer them to, we don't have to go there. I would just urge you that if you don't want to revisit the issues of Chevron deference, the issues of lenity, and the issues of waiver, I would strongly suggest either that you refer this case en banc and let the en banc court consider it if you feel bound by the earlier Davis decision, or an iron's footnote, if you agree with me that I'm right, but you nonetheless feel bound. If it turns out that you agree with me that the earlier decision should be reconsidered and you think the answer should come out the other way, you can always go that path. I'm a little confused, counsel. Are you saying that you believe that law of the case applies and we are bound by our prior ruling that the statute is ambiguous? No, I'm not saying that. I'm saying the law of the case does not apply, but I recognize that it's a close question, and I recognize that this court might think otherwise. So I'm just giving you a secondary alternative. But I would be happy to argue why the law of the case does not apply. I think Holly Frontier certainly is an intervening opinion by the Supreme Court dealing with the issue of waiver of Chevron that comes after the original Davis decision. That is reason enough to say that law of the case wouldn't apply there. I personally believe that Justice Gorsuch's statement is a reason enough for this court to consider it. I also believe that given the rushed nature of the original case and the time constraints and the limited briefing, that law of the case, even under ordinary principles, would not apply. For example, the parties did not get a brief. I think all of those are very strong arguments. I don't necessarily need you to go through all of that. I guess I was just confused because you started out by saying this court has held that the statute is ambiguous as if we were bound by that holding. No, no, no. You can revisit that if you wish. This court certainly held that, but that holding was a preliminary holding. The district court has twice held that the statute was ambiguous. And certainly from that perspective, I think almost every other court, certainly every appellate court, to rule on the issue has held that the statute is ambiguous. I don't believe any of the appellate courts have said that this is the best reading of the statute. They recognize that probably the better reading of the statute is a mechanical reading, looking at the movement of the trigger, not the action or the volitional action. I mean, the statute could be ambiguous, but the government's reading could still be the best one. It may not be unambiguously correct, but it still could be the best one conceptually. Theoretically, yes. Can I just ask you one question on the law of the case preliminary matters that Judge Wilkins raised, which is in your reply brief you say, well, this court should not be bound by a hasty and preliminary prior decision. What did you mean by hasty? Well, so this case came up on a very expedited appellate basis because the government had a very short fuse for the regulation going into effect. And it was briefed in an expeditious way. It was decided in an expeditious way. There was an incredibly brief stay for us to seek a stay at the Supreme Court. So all of it, literally all of it, was hasty in the exact meaning of the word hasty. We were rushing to get it done. And I believe this court was rushing to decide it because the regulation was about to go into effect, even though we had expeditiously challenged it even before the regulation became final. When I hear hasty, I think of something like rash. No, no, I mean literally quickly done, rapidly done under severe time pressures, which I think is one of the criteria for not applying law of the case. And I believe the case is Shelley, but I have to go back and double check my statement on that. But this court has held that where there was unusual time pressures, that's a reason to not apply law of the case. That's all I meant by hasty. While I obviously disagree with this court's earlier decision, obviously it was written and considered at length. It wasn't hasty in the sense of it was a two-sentence decision. I'm not suggesting that. I literally mean it was done in haste. Can I take you to the statute? Yes. And so I'm going to give you a hypothetical, and just bear with me on the hypothetical because I'm trying to isolate what work is being done by what words in the statute. Suppose you have a firearm that has a switch where it can switch back and forth between semi-automatic and automatic mode. And it's just a switch at the top. And if you switch it into automatic mode, well, if it's semi-automatic mode, it works as a semi-automatic does, which is an individual pull of the trigger releases an individual bullet, but there's no need for manual reloading. But if it's switched into automatic mode, then what happens is it's not that it automatically starts firing. There still needs to be a pull of the trigger. But then once the trigger is pulled, there's going to be automatic firing after that. And each time there's a bullet that's expelled, the trigger is pulled. So the trigger keeps moving. Bullets are being released. But it's the switch to automatic and the initial pull of the trigger that occasions the sequence that results in firing multiple rounds. It would depend on how the trigger keeps pulling, I suppose. So if it's an internal mechanism, so the minigun is probably the best example of this, where what you would think of as a trigger doesn't exist on a minigun. There's a button that starts a sequence internally that keeps going until you take your finger off the button. And so I suppose the button becomes the trigger. Yeah, what I'm trying to do is get away from that where the button is the trigger. And I'm saying that there's the traditional trigger on the firearm. And we know that because if it's in semi-automatic mode, it works as the conventional trigger ordinarily does. And when the automatic mode, it's still the trigger that needs to be pulled to start the firing sequence. And each time the hammer relocks after that, it's just that there's some automation in there that allows the trigger to keep moving and the hammer releasing and bullets to keep being fired. So your description is gravitating between one of the genuine semi-automatic, but your description of an automatic weapon, either I'm missing it, or you're describing what is in fact the standard issue automatic weapon for U.S. Army, which is a select fire weapon where they can switch to automatic mode. But it becomes automatic by literally a single pull of the trigger. You do not release that trigger. The trigger does not keep moving back and forth. The trigger remains depressed and it keeps firing. The moment you have to release and re-pull it, that's semi-automatic. Yes, I'm intentionally giving you a weapon that's in between because just to repeat the example and hopefully… But I'm saying it's not in between. Your example is literally the dividing line between automatic and semi-automatic. It's not in between. I thought the dividing line between two things is in between. Maybe I'm not understanding. Well, if the trigger has to reset and move forward again before the next shot can be fired by moving it backward again, that is the definition of a semi-automatic weapon. No, the point is nobody has to move it back again. For the initial bullet to be fired, the switch has to be put into automatic mode, and then the trigger has to be pulled once. Once it's pulled once, it keeps on firing and the trigger keeps moving. And every time the trigger needs to move, nobody has to do it, though. The hand could be removed from the weapon. The finger is not on. You're not moving the trigger. Exactly. Well, my view would be that that is still not a single function of the trigger because it's about the trigger. So I would say that's an automatic that fires automatically but by multiple functions of the trigger. Right. I would interpret that. So it doesn't count as a machine gun? No. That would be the original Akins Accelerator opinion by ATF, which I think the first version of that was correct. They obviously retracted that and had a second version which said, well, the spring changes it. Right. I think their first opinion was right. It doesn't surprise me that that would be your argument because that is what I understand to be a logical upshot of your position on what a single function of the trigger is. And I guess just to bring the point home, that means that for a weapon that fires multiple rounds by virtue of a switch to automatic mode and one pull of the trigger and then every other bullet is expelled automatically. Nobody has to do anything. You can remove your hand from the weapon. It just keeps on firing. It just happens to be that the trigger keeps moving but it keeps on firing. That's not a machine gun. You have identified precisely the difference between the word pull and the word function. Because in that instance, it is automatic, but it is automatic with a single pull of the trigger but not a single function of the trigger. And we think function is trigger focused. So you're absolutely right. That is the line of the word function. And we would take the position that that's not covered. And whether that's good or bad policy, we take no position on that. I understand that. Yes, no, I understand that. And you would take the position that if Congress wanted to prohibit that, they could write a statute that more clearly does it. I'm just trying to understand that functionally that weapon does everything that a fully automatic does because it starts with a single pull. Now, true with a fully automatic, you maintain pressure on the trigger and you have to hold it pulled. But in terms of the outcome, there's a pull of the trigger and then the hand could even be removed and it keeps on firing. That is opposition, but that's not what a bump stock does, obviously. A bump stock, you remove your hand, it stops. You push too hard, it stops. There's a lot of volitional motion there. If you just hold it still, it shoots once and stops. So whatever the case may be there, that's not this. But I agree with you, that is opposition. I'm trying to understand the logical upshot of the way you read it. And with a bump stock, it's at least analogous in the following sense, that once there's the initial, I'll call it a pull, but I'm not trying to interject the human pull. I just mean the pull of the trigger as a mechanical act. Once there's a pull of the trigger as a mechanical act, as long as everything else stays the same, the same forward pressure stays, the finger stays on the extension ledge, and that could easily be a non-figure, it could be a stick. Everything else stays the same, the weapon keeps firing. Only because you are manually engaging it and because the trigger is being released and reengaged with your finger or stick, that's fine. But in fact, that proves the point in some ways. Because literally every semi-automatic rifle can be shot that way, with or without a bump stock. I can stick a stick in the trigger guard of a semi-automatic rifle and push on the back of it with the right amount of pressure, and it will fire in exactly the same manner that you've just described. It has nothing to do with the bump stock. It is a feature of recoil on semi-automatic weapons.  Yeah, that's a fair point, of course. And I understand the function of the bump stock is just to make that very easy to accomplish. That same physical mechanism, it just makes it streamlined so that somebody who doesn't have the right equilibrium and the right skill to be able to maintain the forward pressure without the device can do it with the device. Or else I don't even know what the device does, because it must be doing something. What it mostly does is it makes it a little easier to aim with them, probably. By keeping the motion limited. If you put it on a belt loop or if you put it on a stick, literally. Look, I can take a stick and a C-clamp and press it against the stick and a C-clamp, but it's going to bounce around to be able to hold it. A bump stock doesn't change anything. I could take a tennis ball and put it in my shoulder and rest the stock against that, a regular stock, a fixed stock, and it would have exactly, exactly the same functionality as a bump stock. Because it would give it a little give, basically, but enable me to keep it aimed and steady. If anything, a bump stock makes it safer to bump fire a semi-automatic. It doesn't make it any different. Can I ask you a question about the amendment from the 1934 statute to the 1968 version? Yes. Under the 19, the original definition of machine gun, what type of gun was a machine gun that was semi-automatic? What semi-automatic weapon could fire more than one shot without manual reloading by a single function of the trigger? I'm not aware of any. My understanding of that change in the language was that the concept of a semi-automatic weapon grew, and particularly the nomenclature of semi-automatic weapon grew after the fact. At the time that they did it, they would have called it a repeating rifle, and they wouldn't have said that's semi-automatic. From their original perspective, semi-automatic just meant parts of it are automatic, parts of it aren't. It wasn't the modern understanding of the word semi-automatic. By 1968, we had a very different understanding of semi-automatic weapons. They were a protected class, and that was why that word was removed. I think it's because of the evolution in the language. So I can't say that there was any semi-automatic weapon at the time. It was an ambiguity. It was an overbreath that grew with the growth in certain types of firearms and the growth in language. Then I don't understand what force your argument has that Congress narrowed the definition of machine gun when it removed the word semi-automatic in 1968. Because you're telling me that the language didn't do any work. Not in 1934, but in 1968, it made the statute overbroad and would have covered many other weapons that were understood to be semi-automatic. Congress, not wanting that result, removed the word semi-automatic to get rid of that uncertain overbreath. Back in 1934, it probably didn't have much of a role at all. It was just synonymous. By 1968, it wasn't. Just so that I'm clear, a World War II era .45 caliber semi-automatic handgun was not a machine gun, even under the 1934 definition, right? Correct. Well, it was ambiguous, which is why Congress needed to remove the word. What was ambiguous about it? It was ambiguous whether it was semi-automatic. It was semi-automatic, but it didn't, under your theory, it didn't shoot more than one round with a single function of the trigger. Well, if you think of bump firing, it did in ATF's view. All semi-automatic weapons can be bump fired. In ATF's view, bump firing is an automatic process. You initiate it, and then it just keeps going by itself. And that's true with or without a bump stop. So, on ATF's view, it would have been. I agree with you. On my view, it wouldn't have been. What regulation of bump firing was ATF doing between 1934 and 1968? Of bump firing? I don't believe any. I think the Atkins Accelerator was probably the first instance that they engaged in that question. But the original answer on the Atkins Accelerator was that it was neither automatic nor a single function of the trigger. Understood. I guess I'm trying to zero in then on between 1934 and 1968. It doesn't seem like there was any instance where the word semi-automatic was doing any real work in the statute. Because there was no consideration that a semi-automatic, the standard semi-automatic weapons, whether handgun or rifle, was a machine gun. Because there wasn't even any discussion about bump stops or any other devices. Well, I agree with you that their removal of it was prophylactic, given their addition of the phrase semi-automatic in other areas and the evolution of semi-automatic weapons. I agree with that beforehand. It did very little, if any, work. And whatever work it did would have also been done by the notion of single function of the trigger. So, yes, that's true. But by 1968, when they were expanding gun crimes, when they were expanding regulated weapons like rifles, then it started to do work. And they needed to take that word out. Otherwise, they would be creating the problem that they didn't want to create, which is over-regulating semi-automatic rifles. I'm going to ask this question of the government as well, but I want to get your position on it. Yes. Today, under current regulation, this bump stop regulation, is a Gatling gun a machine gun? My answer is obviously no. And I believe that that opinion, the 1955 opinion, a manual Gatling gun, where you pack it by hand, is still not a machine gun. I'm not asking you whether it should be considered a machine gun or not. I'm asking you whether you believe that the ATF regulation encompasses a Gatling gun or not. Well, I believe the regulation would, but there is an extant opinion from 1955, overruled in part, but not as to a manual Gatling gun. But I believe the ATF's current regulation would likely, logically, call a Gatling gun a machine gun now. So they would – I think they deny that. Much like I think they deny that a trigger crank or a binary trigger makes something into a machine gun. So my answer is the prior opinion says no. ATF's rule, if you took it to its logical conclusion, would say yes. And that's why the rule is irrational, is because it's contradictory to what they say elsewhere. Much like, by the way, a binary trigger, which I think is a far cleaner example. So think about what a binary trigger does. You pull the trigger, it shoots, and then automatically resets. And it only shoots the next shot when you release it. But if you remember what a bump firing in general, what recoil does, if I held a gun with a binary trigger loosely, the recoil will cause it to release, firing a second shot. And remember, you only need two shots to be a machine gun. You don't need 50, you don't need them fast. It can be as slow as you want, as long as it shoots two automatically. And yet the ATF somehow thinks that that's not a machine gun, while bump stocks are. When the most that a bump stock actually does is help you reset the trigger. It doesn't press it again for you. You have to do that with your own force. Whereas with a binary trigger, it is literally automatic. As in, it's not dependent upon recoil. The trigger resets by itself. It's only the second shot that is a function of recoil. Help me understand, I guess, your argument about how we're supposed to conceptualize kind of the ATF's authority and kind of how we're supposed to review this. And I guess what I want to drill down on right at this moment is there's a delegation of regulatory authority in the original 1934 Act and subsequently. When you say that we're not supposed to give this any Chevron deference, how do you conceive we are supposed to construe the delegation of authority to promulgate regulations? Well, to begin with, I would construe it the way ATF itself has construed it, which is it's a narrow implementing delegation, not a broad defining delegation. That's what ATF said in their briefs. That's what ATF said to the U.S. Supreme Court. And to the extent that we're going to defer to them, I think that's worthy of deferring to them on a narrow understanding of what authority has been delegated to them. Putting aside all the non-delegation doctrine concerns and clear statements and guidance, et cetera. So, one, I would say ATF doesn't think they have legislative authority. They think they have implementing authority. Like, you need to pay a tax that needs to be on Tuesday. That's implementing authority. I even think that the grace period they gave for this regulation is an implementing authority. It is not a change in statement of what they think is illegal. It is a statement about when they will enforce it, recognizing that there's a due process problem with having to switch to midstream after encouraging everybody to buy bump stocks. So, help me understand your position on this. Suppose Congress said, we think that bump stocks raise some significant policy issues, but really we think that the expertise of the executive, we're going to delegate to the executive to decide whether to classify them as machine guns or not, and we're fine with that. We're going to delegate that to the executive to make that decision by regulation. And if they decide to make it machine guns, then it's a crime that has a 10-year penalty, up to 10-year penalty and whatever fine. Is it your position that that is unconstitutional? Yes, that is exactly my position. If Congress said, we think machine guns are bad and ACF will decide what's a machine gun and what's not a machine gun, thank you very much. I would say that is an insufficiently cabined delegation on a criminal matter, on a major question, an important policy question. Whether you want to do it on Gundy terms, whether you want to do it on some of the other limits, the major questions doctrine for Chevron, I would say that that is indeed an unconstitutional delegation that violates the separation of powers. I understand here that it's less about fair notice, though somewhat, than it is about separation of powers concern. I think there's, by the way, a very good discussion of this indirectly in the case that came out yesterday. I apologize for not sending it to you, but it literally came out yesterday, the Wooden case. There's a conversation between Justice Kavanaugh on one hand and Justice Gorsuch and Justice Sotomayor on the other hand, talking about the role of lenity and the separation of powers concerns that it implements. And I would say, yes, if Congress did what you described, that would be a separation of powers violation, and we have indeed said that would be unconstitutional. None of those, Justice Glidden, were in the majority, the ones that you just outlined. Correct. The majority didn't need to go there. It's informative, that's all. Okay. Can I ask you about the rule itself then on this score? So, the idea that what the rule does is to exercise prosecutorial discretion and defer prosecution. It seems very difficult to square with the language of the rule itself, which says anyone currently in possession of a bump stop type device is not acting unlawfully unless they fail to relinquish or destroy their device after the effective date of its regulation. I agree that that one sentence sounds like they're making law rather than interpreting law. But there are 20 other sentences where, for example, where they're given an alternative, where somebody says, how about you grandfather in existing bump stops and only make this perspective? And they say, we have no discretion to do that because the language of the statute is plain. So, there is some contradictory stuff in there. But overall, I think the gist of it is we are interpreting it, and we're not going to prosecute you because that would be a due process violation. That would be an ex post facto problem and a contraption problem, to say the least, until we give you time to fix it. Have you ever heard of an exercise of prosecutorial discretion being described by reference to an effective date? Well, yes, I have. I think the ATF says regularly we will not start doing, we will give you a safe harbor to come into compliance before but after a certain date. But did they frame that in terms of an effective date of a regulation? Not in the way that you read earlier, which says you're not acting illegally until X. But I think ATF has been remarkably consistent with that one exception of saying it's always been illegal. We were just wrong. And now we're fixing that to say we now think it's illegal. That has been ATF's consistent position. Look, the interesting thing from my perspective is as follows. Normally, we don't let lawyers change what the agency did.  And the agency head, literally the attorney general, who's in charge and ultimately has to sign off on all of this, signed the brief. So it's not like this is FERC and suddenly DOJ is giving a different answer than FERC did. This is literally the same agency with the same executive department making the choice. So I don't think that canon works quite as well here where they have, I think, so this is important. Yeah, thank you. Can I ask you just to follow up on Judge Wilkins' questions a little bit on the way Chevron intersects with this regulatory apparatus, and particularly the question that's in this case and several others about Chevron's applicability in the criminal context? Yes. So what's your view of what we do with a decision like Babbitt, which, of course, as a lower court, we're bound to follow Supreme Court precedent. We're not supposed to predict where the Supreme Court's going to go. We apply the precedent that exists now in the most faithful way we can. And there is a decision, at least one, of the Supreme Court that applies Chevron deference, notwithstanding the fact that the interpretation has criminal consequences. So I would question whether that was a necessary holding, just from the perspective of how binding is this. I would say I don't think that part of Babbitt was necessary. I think that part of the reasoning given in Alcazab, which is the Navy Marine Corps Court of Criminal Appeals, sort of said neither O'Hagan nor Babbitt was that necessary. So it wasn't technically a holding. You could go there. But I would also look to see what both Judge Sutton has said and what Justice Thomas and Justice Scalia said in that separate opinion, respecting the denial of cert, that said that is too much weight to put on the footnote in Babbitt. If you think otherwise, I agree I have to go to the Supreme Court at some point. If you think that's fully binding, well, then, of course. So I'm just asking for your guidance. My guidance is I don't think it's enough of a holding, a clear holding, that you're bound by it, particularly given other decisions by the Supreme Court seem to go the other way. So if we got the same issue as Babbitt, again, if we got the same issue as Babbitt, you would say that we're not bound by it. It's not ambiguous, so it doesn't matter. Even if there's an alternative, you said, but, of course, we defer anyway. Can I just finish? Can I just finish? So we got the same issue as Babbitt. It comes up again. Your view is that that part of Babbitt is not binding on us. If it's literally the same issue, I would decide on the clarity of the rule, not of – so remember, Babbitt was more our deference, right? I thought Babbitt was them interpreting their own rule rather than interpreting the statute. But the Supreme Court has described Babbitt as a Chevron case. They did so in Meade. Fair enough. I think the answer is I would lean on the primary holding of Babbitt and not the secondary holding. And I certainly think that in light of the statement by Justice Scalia and Justice Thomas, in light of Judge Sutton's decisions, there is enough reason to question whether that single footnote of Babbitt should drive this much weight in a case. If you disagree with me, I understand that. But my guidance would be I would say Babbitt can't carry that much weight, and so we're not going to treat it as if it was the primary holding of the decision. It was a single footnote that was a thumb on the scale that wasn't really necessary to the decision. How are we to interpret Chevron itself, which involved a regulation that had criminal penalties associated with it? I guess I would say that I don't think in Chevron the issue of lenity or the question of whether or not Chevron applies to criminal law was raised. And so while it was lurking in the background, while they certainly did something that would be consistent with my rule, I don't think they decided that question. So that would be how I would view that case and various others. O'Hagan, you know, it was in some of the briefs, obviously, but the court didn't talk about lenity versus Chevron in O'Hagan, I don't think, even though it was briefed. But again, there's sort of a standard canon of don't read more into it just because some party mentioned it or some advocates mentioned it doesn't mean the court decided it. And I wouldn't overextend the court's holdings. I don't think they would treat it as binding on them, and therefore I don't think you need to treat it as binding on you. Well, let me ask you what – I'm sorry. Go ahead, Judge. I just want to make sure I'm understanding where you are given how you started out. If I understand you correctly, if we were to hold that the best reading of the statute is the one that you're opposing, is that the end of it? Let's assume we're correct. Let's assume that somehow it's – everyone turns out, everyone agrees the best reading of the statute is the one that you're opposing. Are there any other issues that you're raising? Is that it? That's the end of it? No. There are other secondary issues on arbitrary and capricious application. No, forget the arbitrary and capricious application stuff, all right? I'm not saying that's – I understand that. I'm saying is there anything else that I should wonder about? If I were to decide in my mind the best reading of the statute is the one that you oppose, is there anything that would cause me to rethink that? Any other issue on the table that would cause me to rethink that? Given the assumption that you've made, no, I don't believe there is. Okay. Other than, like I said, some of the arbitrary and capricious stuff. All right. I just want to make sure I have that straight. Thank you. If you independently interpret the statute and say, I'm reading this and this is what I think the statute says, is that true? That's it for me unless the Supreme Court would have said you're wrong, right? Correct. Okay. Thank you. Then Chevron ceases to be a question. Exactly. I just want to make sure I heard you correctly. You did. Then I just have to take it up. So in your briefing, you emphasized the 1968 definition of function with respect to this whole issue of single function of the trigger rather than the 1934 definition of the term. Why is the 1968 definition, why does that take precedence over the 1934 common understanding of the term? I think it's a more recent expression. I mean, they significantly modified it. They significantly added to it. Congress significantly modified the statute, significantly added to it. And so their understanding at that time, I think, would carry more weight, particularly given that it then later became a crime. So if you're wondering what they thought of when they made it a crime, I would look to their contemporaneous or close in time contemporaneous understanding, not their ancient understanding. And like I said, I think the fact that semi-automatic weapons were a growing category of weapons that weren't thought of in the same way back in 1934 is a good reason to take the more current understanding of where the line would be. For example, both between automatic and semi-automatic, as well as even the part that didn't change, single function of the trigger. But I think even if you go back to the 30s, my version of what is an automatic weapon, if you look at the definitions that we cite, they include things like you hold it and it keeps firing until you release it. And everyone agrees that a bump stop, the trigger is released before each subsequent bump. So even on the contemporaneous definitions of an automatic weapon in the dictionary back at the time, I think agree with me rather than with the government. I'm trying to understand your rule of lenity argument, because my understanding of the rule of lenity is that you don't employ it until you've exhausted all other tools, the traditional tools of statutory construction. So if, let's suppose, so if that's the case in Chevron, you're saying that Chevron is not a traditional tool of statutory construction and that's why the rule of lenity can trump Chevron? That's exactly right. Chevron is a delegation of legislative authority. I think that's precisely what this court earlier... What court has held that? I think that's Chevron itself. It says we read ambiguity... What court has held that the rule of lenity should take precedence over Chevron because Chevron is not a traditional tool of statutory construction? I believe in terms of full court decisions, I mean, the various judges have said as much, but in terms of full court decisions, you have Alcazab, which is the Navy-Marine case, which in fact held that. You have Judge Batchelor, although obviously that got vacated and then evenly divided on Bonk. But in terms of a court having held that, I'm not saying it's still binding, obviously, but there have been ample numbers of judges who have taken exactly that position. You've given me the name of one case where you say it was a holding. I believe Alcazab. Yeah, Alcazab, which is the U.S. Navy-Marine Court of Criminal Appeals. Now, that's an intermediate appellate court. I'm not over-claiming what it is, but it is what it is. But at the end of the day, just the logic of lenity, I think, necessarily drives this question. And the logic of Chevron, if you look at all the delegation... You started off with a premise and moved off pretty fast, but Chevron says ambiguity equals delegated authority. That is wrong. That is absolutely wrong. And we have finally, after a lot of agencies tried to run with that notion, you'll find a slew of cases in that circuit saying it's totally wrong. Look at Justice Breyer's response to Justice Scalia in the city of Arlington saying, oh, don't... Your language is a little loose. Merely because there's ambiguity does not mean there's delegated authority. And read Chevron carefully, counselor. Delegated authority is a separate requirement. Ambiguity may inform it, but it is not the answer. Mere ambiguity is not delegated authority. And you all have done a real disservice to us and not just you, but anyone who's propounded that. That notion is absolutely incorrect. Well, I'm sorry if I misspoke. It's a position that I criticize, not that I endorse. I'm trying to give the other side of it the full breadth of what I think the broadest view of Chevron is. I do not endorse that position. I don't think you can delegate authority through ambiguity. I think that's wrong, and I think that's a delegation problem. It's why I think the rule of lenity applies. So I'm sorry if I gave a different impression on that. I totally agree that it's not enough. Can I ask a question about the rule of lenity? The interrelationship between the rule of lenity and Chevron, in order to perceive of it in the way that you are, we would have to disagree with the footnote in Babbitt. Now, I take I take your point that it's a footnote and you've got some arguments that we should pretend as if that acts as a footnote isn't governing. At least I think you'd have to say that. But otherwise it can't be squared. Right. I mean, that is the issue that the court addressed. The court did address that issue, that exact issue in Babbitt, albeit in a footnote, some could say. And arguably unnecessarily. But, yes, there's no question that the footnote in Babbitt says what it says. If you think that is controlling law on this court, then I have only one alternative, and it's obviously not the panel. On the issue of lenity in particular, I just want to make sure I understand. On the issue of Chevron. Right. Yes. Chevron versus lenity. Interrelationship with lenity. OK. Correct. And look, that's sort of I don't make any bones about the hurdles I have to overcome in my case. I recognize that. And at some point that hurdles that hurdles. No, I understand that. I just want to make sure that I understand and I'm familiar with the notion that the council plays the hand that they're dealt. I get I know that. And I just want to make sure I understand where you feel this lies in the architecture of the argument and what freedom your view is that we have on behalf of your client. And that's helpful for me to know. Yes. And my view would be I would treat it as an unnecessary reaching of an issue that they didn't have to reach. And so it's not it's not controlling on this point. I understand that that is open to debate and subject to another view. So let's suppose I agree that Chevron is not the operative construct to decide this case. So so what some people call Chevron step zero. You know, I agree and I accept the government's position that Chevron shouldn't apply. Notwithstanding that need says that then that we try to reach the best interpretation of the statute and to the extent that there's an agency regulation that speaks to that. You know, we can defer to it is for whatever persuasive value it has so-called skid more deference. Wouldn't that be the construct that we would use then to decide this case if we were to agree with you that Chevron doesn't apply. I've always had a little problem with skid more deference because it says if they're persuasive, then, yeah, you should listen to them. And I agree if they persuade you on the merits of their interpretation that I'm going to lose. But I don't know that skid more using the word deference in the context of skid more adds any weight or value to the government's persuasiveness. It's not more persuasive simply because they did it in a regulation. It's persuasive on its own. I'd like for you to just answer my question as just as just as a jurisprudential matter. If I agree with your argument that Chevron doesn't apply, then I should follow the construction exercise as undertaken in me. Yes or no. Yes, though, my only qualifications of that is I think it's sort of an empty set, basically. It's no different than if the government makes a good argument in their brief, they make a good argument in their brief. They make a good argument in regulation. It's a good argument. But if it's a bad argument, it's a bad argument regardless of where it shows up. And so, yes, you should apply me. I just think it's an empty set. And let me ask my colleagues if they have any additional questions for you. We'll give a little time for rebuttal. Thank you. Thank you. We have the government now, Mr. Stern. The initial question presented here, which talked about a while ago, is the question of the law of the case. We think that prior position prior decision is the law of the case. We also think, as the court knows, we agree with almost everything in that decision in terms of its analysis of the application of the statute, except that instead of saying that it was a reasonable position, we think that it would have been better if the court had said it's the best reading of statute. And that's really the only respect in which we would sort of, like, if we had that decision to do over again, that's the change that we would make. But we also do, you know, and obviously this is within the court's discretion to what extent it wants to look at any of the questions presented in that case. We do think that as it certainly falls within the description of law of the case that this court presented in Shirley. You're not suggesting that we're bound to apply that analysis. Right. Right. And you're not suggesting we're bound to apply Chevron. We can on this time around, we can simply say we've looked at it again with the best reading of the statute and the discussion. That's correct. There's nothing in the law that forecloses that possibility. That's correct. It's the law of the case is a judge made rule to Chris. This court has said it's a prudential rule. It's not binding on the discretionary and this discretionary. We have not urged that the court is. No, no, I'm just listening to each year. I'm just trying to make sure I understand what you're saying. That's all. I'm not not fighting with either one of you. So just to take up the invitation to look at the interpretation issue first and put aside Chevron for the moment, because I think everybody agrees that if we conclude that it's the best your reading is the best reading of the statute, then there's no need to get into Chevron. If we conclude that your reading is not the best reading of the statute, then there's a question about whether we should get into Chevron because your reading might still be resuscitated, whether you want us to do that or not. But let's talk about the statutory interpretation issue first, if I can just ask you a question. So on the same hypothetical that I asked to Mr. Jaffe, it's a it's a weapon that can be switched into automatic mode. And it requires then a pull of the conventional trigger, what everybody would envision to be the trigger. If you just looked at it and we know that that's the trigger, because in semi automatic mode, that's the part of the gun that needs to be activated in order to fire a single round. But in automatic mode, one pull of the trigger starts a sequence where the trigger then keeps pulling and multiple rounds are dispersed. Now, I'm pretty sure that you would think that that's a fully automatic weapon, that that's a machine gun. And my question is this. The statute says it's a weapon which shoots automatically more than one shot by a single function of the trigger. And I've left out some language that I don't think is necessary to keep in for these purposes. And isn't it the case that in that hypothetical, if I think of the initial function of the trigger, not as a human pulling the trigger, but just as a mechanical act of the trigger being pulled, that every subsequent round is also being dispersed by the same function of the trigger. In other words, they are it seems to me that where we are is the plaintiffs would say, well, that's multiple functions of the trigger. Every time a round is fired, it's the same function of the trigger that started it. Ergo, multiple functions of the trigger. Ergo, not single function of the trigger. And then it seems to me what you're saying is, well, I don't care if the other bullets are being disseminated by the same function of the trigger, as long as one function of the trigger starts the sequence. I think that pretty much encapsulates it. I mean, our point is simply that when you go back to the consistent, I would say, with the original 34, both the legislative history, both the House report, also the testimony of the president of the National Rifle Association, both described sort of basically used function and pull interchangeably. And what the purpose of the machine gun is, is not to sort of think, it's not that it's interesting in whether the trigger, exactly what mechanism it is that keeps going without human agency. The point is, do you do a single thing? Do you do a function or a pull to start it up? And then does it fire automatically? I'm going to have to stop here for a second because one thing I'm not completely following is there's one way to read the statute, which it sounds like you're saying now. I wasn't quite sure I understood your briefs to be arguing this, but let me just make sure I understand it. That the single function of the trigger, the relevant single function of the trigger, because that's the words of the statute, so we have to identify what is the single function of the trigger, you're describing it in terms of a human action of pulling the trigger. I guess where I was trying to go is, even if it's not the human action of pulling the trigger, it's just that the trigger gets pulled. It's just mechanical. The trigger gets pulled. I'm not worried about the fact that a human being is doing it. I'm just saying the trigger gets pulled. Okay. That's the single function of the trigger that occasions the sequence of events that you think makes the weapon a machine gun. Regardless of whether, it doesn't require me to think that single function of the trigger means human pulls the trigger. It just means the trigger functions and then automatically multiple bullets are fired. Right. It's a single function that sets the automatic sequence in motion. Then on that understanding, I think one response is every subsequent fire is the same function of the trigger. Yes, I think that's right. You could have any of a number of results. It's in automatic mode. The movement of that trigger, once it is started, once it's invoked and acting automatically, the movement of that trigger has no functionality. It's merely a result of it being in automatic mode. I thought that was your argument. It is, and I may, in this taxonomy, I'm hoping that that's consistent with my answer, Judge Renderlassen, because you're right, Judge Edwards. That is our point, is that what the statute is concerned with is the original function that then sets in motion an automatic sequence. I'm not necessarily saying I disagree with that. I'm just trying to understand exactly how that works. I'm just trying to understand it, too. I mean, you could start it by saying, boo, and the gun will probably come to that. You say, boo, and it goes automatic, including the movement of the trigger. The trigger would simply be a consequence of your putting the gun in automatic mode. It doesn't have any other functionality, right? That's right. That's what I thought your position was, because otherwise you're leaving it open to manufacturers to play all kinds of games, and there's no question this gun is going automatically. I never got it as I was reading this stuff. The movement of the trigger is merely the result of the gun acting automatically. Right. But I wanted to make sure that was your argument. As I was listening to you respond to my colleague, I wasn't sure what I was hearing. That's the way I have understood it, but I want to make sure what my thinking is, is what you're saying or whether I'm missing something. I don't think you're missing anything. I mean, I understand the other side sees it differently, and so be it. That's what the case is about. I think Mr. Gaffey put the other side's position very clearly, which is what you're looking at is, does the trigger keep moving back and forth? Right. Which to me, yeah, so that's a result of it being automatic. So what? It's moving back and forth. All kinds of things can happen. That has nothing to do with it now being in automatic mode. That's correct. I think that's our position. Okay, I'm just I'm just trying to understand the one potential complication is if you have a weapon that's triggered by a voice or by a switch, then you could redefine that to be the trigger. But when you have a weapon where you actually have to pull, and I'm not necessarily saying I disagree with where you are at the end of the day, or that I agree. I'm just trying to understand exactly how this functions in a situation in which there's not a separate. We'll call it a trigger that occasions the multiple rounds of firing. It's the same. It's the same part of the firearm that has to be pulled. That's the single function of the trigger. And by the trigger, the statute speaks in terms of trigger in the singular, which I read to me, we have to identify what the relevant trigger is. And once that trigger is pulled, multiple rounds can can then be occasion, but it's the same movement of the trigger that occasions each multiple each subsequent round. Right, so that, and there have been many ingenious attempts with the Fifth Circuit's old decision and can't help with the fishing reel. And, you know, we think that the Fifth Circuit was correct when it said, no, that's, you know. Do you agree that it's each subsequent movement occasions? Do you hear what the Chief Judge said? He said occasions the subsequent shots. That's not consistent with what you and I, it's merely a result of. They're very different, but the subsequent movements of the trigger are just, it is what we see once the gun is on automatic mode. It doesn't occasion the automatic mode. Unless I'm misunderstanding your position. It's merely a result of it. I apologize. I didn't actually understand Judge Grinabason. That's the word he used. You have to listen to him very carefully. Very shrewd in how he posits things. This is not a stupid man. You need to listen very carefully to what he's saying. I'm honestly not trying to be clever or elliptical at all. I guess all I'm saying is this, that for each subsequent round to be fired, the trigger needs to be pulled because otherwise the hammer's not released. In other words, the trigger has to move in the same way for another round to be fired. Now, I agree with what you and Judge Edwards are saying. It's my hypothetical, and I embrace the way you're saying it, which is that something initially happens that allows that to happen automatically. And I don't think the plaintiffs would disagree with that. They disagree with the way I'm framing the hypothetical. The trigger automatically gets pulled over and over and over after the initial switch and the initial pull of the trigger. It's just that each subsequent round does require the trigger to move because otherwise the hammer's not going to be released. But that's like saying each subsequent round requires a bullet to leave the gun. So what? I'm just trying to understand. Yeah, that's the consequence of it being in automatic mode. If the bullets don't leave the gun, it's not in automatic mode. Something's wrong, right? So you have this thing down there that's going back and forth, back and forth. That's not what is causing it to be in automatic mode. You don't need that. It's just the result of it being in automatic mode. Is that what you're saying or not? Yes. I mean, the only difference is I understand Mr. Jaffee's position is the whole difference is between what you would agree is a machine gun is I press the trigger in to keep it in the automatic mode. In the bump stock, I press forward to keep it in the automatic mode and the trigger moves. And that's the difference. And I think we all agree that's the difference. And for us, that should not be determinative of anything. So, I guess my question is this, then I think we all agree descriptively what's happening when a subsequent round is fired. That just happens. The subsequent round has to be fired. Otherwise, we're not even talking about multiple rounds being fired. A subsequent round is fired. Is that fired because of another function of the trigger? No. No, because I thought one, you could have two responses. One would be no. The other would be yes, but it doesn't matter. And I was one, I was thinking it would be the latter, not the former because. And I thought it would be what you said. That's what I'm trying to isolate. Yeah. Is it not? The trigger doesn't function at all in your view. I just want to make sure I understand. I'm not saying it's right or wrong. I just want to make sure I understand your argument. No, I mean, our view is that the, it goes back and think about what they were getting at is sort of a common sense idea. If you give it a pull or a function, does that then set in motion the automatic sequence? So, it's that first thing that you do that is the function. And if you think of the word pull being put in there instead of function, I understand that you would say well. I'm really confused at this point because a semi-automatic weapon fires, you have to pull or actuate the trigger. And if you fire that weapon and you hold the trigger in and don't release it, it's not going to fire again. Can we agree on that? Yes. So, the only way that it can fire again is for that trigger to be released so that the firing pin or the hammer, however you want to think of it, can reset so that you can pull the trigger a second time. Right? Yes. And that's why the ATF took the position in the 1955 ruling that a Gatling gun was not a machine gun. Correct? Well, I admit I didn't read the 1955 rule. In preparation, my recollection of the 1955 rule is that the agency said that they're apparently, I'm not an expert in Gatling guns, apparently there are a range of different Gatling guns. And I believe that they said some were, some weren't. And then after the Seventh Circuit's decision in Fleishley about the minigun, the agency sort of modified its rule to some extent. So, I apologize, I just, I don't want to sort of speak to something that I can't be sure of. Well, I'm confused about that because that is a key portion of appellant's brief. So, I don't understand why you're not prepared to discuss that. But what the 1955 ruling said is that with respect to certain Gatling guns, they would not be construed as machine guns, even if they could be construed as operating automatically. Because there was, they weren't being fired as a result of a single function of the trigger. It was essentially the trigger moving and operating repeatedly, very quickly through the use of a hand crank or some other mechanical device. Right. And in the current rule, one of the commenters said that, expressed the concern that a number of commercially available items such as Gatling guns, et cetera, could be construed as machine guns under the rule. And the response to the department was, well, we disagree that other firearms or devices, and they don't mention Gatling guns specifically, but it's clear kind of response to this comment will be reclassified as machine guns under this rule because because in those situations, the shooter must release the trigger before another round is fired. And so that's not going to be considered a machine gun. And so I'm trying to understand the department's position today as to Gatling guns under this rule. Are they machine guns or not? I don't want to say anything that the agency hasn't officially said, but the distinction that your Honor just drew, citing the agency between having to keep continually manually reset the trigger or to do action that keeps the trigger moving as opposed to the trigger being set in motion by engaging in an automatic sequence. That's the critical dividing line. And among Gatling guns, that would be, I think, the distinguishing principle because that is the principle that's being articulated here. Suppose I invent basically a mechanical hand with a trigger finger that you can attach to a gun, and it's got a motor inside it, and you push a button on that motor, and the finger can operate back and forth really rapidly and continuously. And so that I can hold the rifle and attach my invention to it and push the button, and what happens is that the finger just goes back and forth and back and forth and back and forth very quickly until the rifle runs out of ammunition. Is that a machine gun? Yes, and it's also actually pretty similar to something that ATF has at Grasda's machine gun, which is referred to as the auto glove. And so why isn't there, why isn't it operating by more than a single function of the trigger? It goes back, I think, Your Honor, to the distinction between the sort of, was there one pull or function that set in motion an automatic sequence? And if you do one thing, and then And that hypothetical, if I can just follow up on Judge Wilkins briefly, just to make sure I understand. I just realized that I was on mute, but I was doing my part of my answer. I think we heard that. No, we heard it. Yeah, you were muting on and off, but I think you unmuted in time to get the answer. I just want to follow up on Judge Wilkins' hypothetical, which sounds like it may be similar to the auto glove. It's not that it's a machine gun because there's some other thing that's the trigger. Because that's one way to do a lot of these, is you redefine the weapon so that some other thing, say a human voice or a switch, becomes the trigger. As I understood the hypothetical, it's the same trigger. And that trigger has to be, it's just that the device allows that trigger to be mechanically pulled repetitively really, really, really quickly. Yes, and again, I think that's like, you know, very similar to the less sophisticated version of looking at CAMP in a certain place. So the thing about CAMP is, I didn't understand CAMP to be a situation in which the trigger actually keeps moving. I thought there was something internal with a fishing reel, but I could be wrong about it. I didn't know the precise mechanics of it. I believe that the trigger kept moving. Then it gets closer. Okay. So just to go back to my hypothetical. So if my invention were that the mechanical hand, basically all it did was, if you push the button, it fired once. And you had to push the button a second time for it to fire again, and so forth. It was just basically kind of an invention for someone who maybe kind of has carpal tunnel or something, they can't, they have trouble, you know, having enough force to pull the trigger, so this does it for them. You would say that that's not a machine gun or that is a machine gun? Right, that would not be a machine gun. So it's not a machine gun then, but if I modify the invention so that if I push the button, it keeps firing until you push it again to stop it or the gun runs out of ammunition, then it becomes a machine gun. Yes, that's almost exactly the definition that's in the rule. And so why is it operating under a single function of the trigger when it just repeatedly pulls the trigger versus when you just have to push it each time to pull the trigger? I mean, the gun is still operating the same way, it still fires the same way. Right, I mean, the gun is always at some level going to keep firing in the same way. I mean, the only difference that's really being discussed between the prototypical and these anons are that the actual trigger keeps moving once it's set in motion and that that's not the internal mechanism that keeps the gun firing in the prototypical machine gun. I thought, and maybe even the rule got into this a little bit, I thought in the hypothetical that Judge Wilkins gave, if it's a button that then causes what we conventionally refer to as the trigger to move repeatedly, then one way to think about it is, well, then the button then becomes the trigger for purposes of the statute. And yes, there's another device that keeps moving back and forth, but if you redefine the button as the trigger, well, then you win because that's the trigger and it's a single function of that trigger that then occasions multiple rounds of fire. Yes, I think that that's a clearer sort of way of thinking about it. And the point, again, I keep sort of saying the same thing, but the point again is that what you're looking at is the one function that starts the firing sequence. And I think what makes it more complicated for this, I don't mean to assume an appendage to Judge Wilkins' well laid out hypo, but just for my purposes, what complicates it a little bit is with a bump stock, you don't have the separate button that can be reconceptualized as the trigger. The conventional trigger is the trigger. And what you need to do to win, and it might be right, but I'm just saying the single function of the trigger is the first function of the trigger. And then every other round, also admitted because of the same movement of the trigger, it's just what you'd say under the statute is any weapon which shoots automatically more than one shot by a single function of the trigger, it did happen by a single function of the trigger, even if there's other movements of the trigger that result in additional rounds being fired. I mean, in some ways, I actually think the bump stock is an easier case. It doesn't involve anything else. The point is, and so it just goes back to the earlier colloquy with yourself and Judge Edwards about what it means to set this in motion. And so, you know, we think that this is the, you know, relatively to anything is what can be thought of as straightforward in this area. We think it's relatively straightforward. Suppose, for the sake of argument, we believe that that's a reasonable interpretation of the statute, but it's not the best interpretation of the statute. What do you want us to do? Then we would certainly hope that the court would either be persuaded that it's the best interpretation by according some form of deference, which we do think would be appropriate, or else, like the preliminary injunction, accord Chevron deference. But, of course, you know, I just want to make clear that the position that we've heard throughout is that it's the best reading. And as Your Honor's question suggests, we do think that the Mead or Skidmore deference is not a null set. And what the agent, what the court is doing is looking, like I think what the cases talk about, you know, in part is looking to an agency's expertise and experience and how well it's explained. And, you know, the court isn't going to say I sort of, it's not Chevron deference, but a court can gather wisdom from an agency to the extent that it's looking the same way that it might. Well, the agency's expertise concluded for a decade that bump stocks weren't machine guns. And, you know, over the course of, you know, decades or, you know, previously, you know, originally construed the Atkinson's accelerator is not a machine gun and then changed its model. The agency, you know, is all over the place here. Well, I would say, Your Honor, that it's, I mean, you're absolutely right in one sense. I would say that it's not the agency in the same way the sort of when you come and you get a non-binding sort of like opinion from ATF, that's not sort of something that's the subject of a whole agency consideration and endorsement. So the, but the question in any way is when the agency does come and give its full explanation and look and addresses all the, you know, the concerns that have been raised, does the court find that parts of the whole of it are persuasive? And that's all we're saying is that the court reads the decision and thinks that it is persuasive. It is appropriate to look at that and to, you know, it's not determinative of anything. If we get past Skidmore deference, and I understood your answer to Judge Wilkins' question to be, yes, you'd like us to say that it's the better reading and yes, you'd like us to say, even if we need to use Skidmore deference to get there, it's the better reading. But if we're not there, then you would accept Chevron deference as a way to win the case, which is different from what I understood your position, the government's position to be at the preliminary judgment stage. But it sounds like now you're saying Chevron deference, you would accept Chevron deference as a way to win the case. You're not affirmatively urging the court not to apply Chevron deference. Well, I think, yes. I mean, and I think the court was right that it's not for us to accept it or not accept it in the same way that we often ask for it. And asking doesn't mean that we get it. And so it's, that's something for the court to determine. And we are, we want this regulation. We think it's very important and we want it to be upheld. Is there a reason in the government's view that Chevron deference does not apply here? We don't think that it was a legislative rule. I want to get to that in a second, but I just want to make sure that's the one. You're not saying that Chevron is something that the government can waive by litigation conduct. You're not saying that Chevron doesn't apply when there's criminal applications, including this criminal application. You don't think that there's a problem with this regulation getting Chevron deference, notwithstanding its criminal applications. Yes, I mean, I think this court's precedents say that. But what the government, but I was trying to understand the government's position. No, that is our position. So the one, the one obstacle to applying Chevron, in your view, to this regulation is that you view the regulation to be interpretive rather than legislative. That's correct. And then what do you do with, I think there's other statements too, but what do you do with the statement that I read earlier? Anyone currently in possession of a bump stock device is not acting unlawfully unless they fail to really destroy their device after the effective date of its regulation. How's that interpretive? That statement is this week. This is an area where Mr. Gaffney and I are in agreement. If you look at that statement and some of the other statements that this court cited in its earlier opinion, I fully understand how the court concluded that. This is, I think, a subject that we really, this is one thing we really didn't, I think, brief in the last go around. And Mr. Gaffney is right that if you look at a bunch of the other statements in here, I think they become pretty clear. I can sort of read through a bunch of them. I don't think I need to read those. I think you would find that helpful. I think I know which statements those are. And I guess the way I read those statements is commensurate with the way the rule is constructed because the agency and the rule itself says our first argument is that this is the best reading. And we think that this is the reading that we need to follow because it's the best reading of the text. And then the alternative argument is even if it's not, we get Chevron deference. And the agency cites Chevron and goes through the Chevron framework. I mean, it's hard to imagine a rule that more clearly is asking for Chevron deference than one that invokes Chevron itself and then goes through the Chevron framework as I read it. And then, and especially coupled with this statement, I'm not saying that, I'm not predicting what's ultimately going to happen with this rule under Chevron. I understand that there's a lot of debate about the propriety of applying Chevron in the context of this kind of rule. But I'm just trying to understand what the agency actually thought it was doing. And when you look at what the agency, in fact, did, it said that it's the best reading and that the statute governs and, therefore, this is the reading the agency thought it needed to give. But then it also said even regardless of that, we think that we're entitled to Chevron deference on it. Yeah, that would be one statement that I think goes to that in part, which is, it said, 83 Federal Register 66514-01. 66514, what did you say? 514-01. Oh, I got it. And this is the one where they say they're actually distinguishing, like in response to some statements, they're distinguishing this rule from State Farm, where they say that case involved a discretionary policy decision and did not depend on statutory construction. The bump stock device rule is not a discretionary policy decision. It's based solely upon the functioning device and the application of the relevant statutory definition. And they say, and I understand that one could sort of say, well, that doesn't resolve it. But I do think when we take that together with various other statements, the agency didn't think that it was exercising its authority to establish a new rule. It was offering its view that this was the correct reading of the statute. And the agency sort of indicated that it believed it was then entitled to Chevron deference. That's one thing where we do think that the lawyers in court can appropriately question the agency's judgment in that one respect. But the fact that the agency thought that it was interpreting the statute rather than setting out a legislative rule, I do think comes through throughout. And it's in the same way that when the agency, like in the Aikens accelerator case, said, okay, look, they've issued a public notice. And they said, okay, in that case, you can keep these things if you remove the springs. And here there's nothing to remove from the agency. It's saying, look, you know, we're not, you know, it's a matter of enforcement discretion. You know, nothing, you know, we're giving everybody grace period. And all that, I think Mr. Jaffee and I are in accord on that. Can an agency not do the following? Okay, just conceptually, can an agency not say, as a first order matter, we're engaging in interpretive exercise because we think the statute favors our interpretation. We're just interpreting the statutes to say that. But insofar as there may be ambiguity in the statute, we're then exercising our legislative authority that we were granted under Chevron to forward the same rule legislatively. We now think that's the interpretation that governs as a matter of law because we can do that. Can an agency not do that conceptually? I think an agency can do that if it has the authority and thinks it has the authority. Do you think this agency does have the authority to do that? I don't want to speak definitively, but we do think that it would be, like, problematic. Like, it's not at all clear at any rate that Congress has vested the authority in the agency to, like, sort of promulgate a rule that is not the best statutory interpretation just as a gap-filling matter. That's just Chevron, isn't it? That's just what Chevron is. That's why we think that the agency probably does not have the authority to promulgate that kind of a rule. Our only point right now that I was trying to address is we don't think the agency was asserting that kind of authority. I understand that, but why don't you think the agency has that kind of authority? What are you basing that on? We didn't address it in this case. We addressed it in other circuits. But if you look at the various kinds of authority in the statute and where they're given and for what they're given, and this particular plan of authority contrasts with others, I'm happy if the court would like a supplemental filing. But it's the scope of the delegation. I'm just asking for a description of what it is. It's the scope of the particular delegations you're talking about. Yes. And we just think that it probably does. So this isn't a settled matter, and I don't want to get out ahead of anybody on this, but we do think that it's questionable, at least. But we also think that the agency doesn't, even if the agency thought it had the authority, and perhaps it does, but it didn't purport to rely on that and exercise it. And let me ask you then the last question on this score is I'm just reading from the rule, and this is at 66-527. The department believes this rule's interpretation of automatically and single function of the trigger accords with the plain meaning of those terms. Moreover, even if those terms are ambiguous, this rule rests on a reasonable construction of them. Congress thus implicitly left it to the department to define automatically and single function of the trigger in the event those terms are ambiguous. See Chevron, 467 U.S. at 844. That sounds to me like an agency that thinks it has authority to define automatically and single function of the trigger in the event those terms are ambiguous. Is that not an exercise of Chevron authority? Frankly, I just don't think that the agency was fully addressing exactly what the nature of the delegation was. But Your Honor's point, obviously, you know, it is well taken, but we do think that what the agency was doing was issuing an interpretive rule, and we think it should be upheld on that basis. Okay. Let me make sure my colleagues don't have additional questions for the government. No. Thank you. No. Maybe this was covered in your questioning with Chief Judge Sreenivasan, but I just want to be clear about this. So you're saying today that you would prefer for us to hold, I guess, like the Fifth Circuit in the Cargill case, that this is the best interpretation of the statute and leave it at that. Alternatively, it's the best interpretation of the statute, perhaps aided by some sort of Skidmore deference and leave it at that. Or alternatively, even if we don't conclude that it's the best interpretation of the statute, even with Skidmore deference, then under Chevron, we say it's a reasonable interpretation and uphold the regulation. Right? Am I correct? Am I correct that that's... Yes, Your Honor. I may be over speaking too loud, but yes, Your Honor, it's correct. So just so that I'm clear about this, then, if the agency in its rule had said, you know, over the years, we didn't think that bump stocks were machine guns because we thought that that was the best interpretation of the statute. But the statute could be reasonably interpreted and construed to include bump stocks. And so, given that it is ambiguous under Chevron, we're going to adopt that construction, even though we concede it's not the best interpretation of the statute. Suppose the rule said that. You would say that we should still uphold the rule? We would have to recalibrate and make sure that we, at that point, the precise question of the agency's authority would be put front and center. We certainly would not be here saying that it should be upheld as the best interpretation of the rule. But I guess I hear in your answer, you don't think that that necessarily changes the analysis that we as a court should undertake, if that is, in fact, the way that the rule is written. I'm just, I'm trying to think of Chevron cases where the agency has put it in those terms. I mean, usually, you know, sort of, I'm just, as I'm trying to sort of mentally go through the cases, it's usually the agency says, we think this is the best interpretation. And the court goes, I might not have agreed with your interpretation as an initial matter, but it's good enough. So, like, we're going to record a deference. It's kind of stranger if the agency begins by saying that it regards the question as ambiguous. But, you know, again, I'd want to, I'd just like to, in fact, address that. The reason I'm asking the question, I'm not trying to be obtuse here, is, I mean, I think it gets to one of the concerns that's raised by your friend on the other side and some of the, you know, concurring dissenting opinions, et cetera, that your friend cites, which is, why is it okay for a court to undertake that analysis and say, well, we don't think that this is the best interpretation of this criminal regulation, but it's a reasonable one, and so we'll defer to the agency and allow it. Why should it be okay for kind of the court to think about it in that fashion if we really wouldn't countenance that if the agency were to operate in that fashion, if the agency were to just say flat out, you know, this isn't really the best interpretation of this language that Congress gave us. But given the political, you know, realities here, we can't get a, you know, the administration has tried but can't get legislation through Congress, and there's a public outcry to do something about this. We think that this is a reasonable interpretation, so we're going to adopt it. And, you know, we're just being very candid about what's going on here, and that's what we're doing. Can an agency operate in that fashion? Well, I don't want to say that's not this case, but it's not this case. I understand. I mean, I understand that when a court records Chevron deference, it's looking, you know, and this is a court-made doctrine. Courts decide when they're going to a court Chevron deference, and if a court thinks that an agency is basically looking to the agency and its expertise and saying, you guys, like, you know, and, you know, the court in this preliminary injunction opinion, like, sort of specifically said, I think, in the context of the single function of the trigger, sort of notes that the agency is in a better position in the court to evaluate all the concerns that are involved. And that's, I think, the kind of thing that triggers Chevron deference. And if an agency is going, you know, I don't really know what the best answer is, there is not a lot of reason for a court to say I'm going to defer to an agency that doesn't really know what the best answer is. I thought the answer to Judge Wilkins is, isn't that just brand X? I mean, the brand X says if a court decides the better interpretation of the statute is X, that still leaves room for an agency to decide that the interpretation that's going to govern as a matter of law is Y, as long as the court didn't say it's unambiguously the one that doesn't tell. And that necessarily means that an agency can decide, even though this is not the better interpretation of the statute, according to a court, it's still going to be the interpretation we adopt as a matter of law going forward. Isn't that just what brand X says an agency can do? But it certainly does, yes. I mean, the court... I can't imagine our court upholding that. I cannot imagine that. Your Honor, I'm not disagreeing, and I can't think of a case... I also cannot think of a case in which that's occurred. I mean, my understanding of brand X would be, you know, the court says, you know, I'm not upholding this, but the agency has not spoken to it. And then if the agency comes back and says, look, you know, and explains why the agency thinks this is the best interpretation, even if the court had not originally thought so, that a court, in light of the agency's interpretation, as long as it's not foreclosed by the statute, may then determine to give each other on deference. And that's a very different situation, I think, from what Judge Wilkins was positing here. Yeah, I don't want to get too academic about it, but I thought with brand X, there's a difference between the agency itself concluding it's not the best interpretation and a court concluding it. My point is simply that after a court says that interpretation of the statute is in one direction, the agency sort of doesn't have the freedom to say, actually, the best interpretation statute is the otherwise. It's not going to matter because the court has already said that's not right. But even if a court says the best interpretation of a statute is in one direction, the agency is still free to adopt an interpretation that disagrees with that. That's what I think that's not. Well, not in two situations. One, if the court says this is the only interpretation. That's yes, definitely. The agency's not in play, and I'm suggesting with no evidence, just experience, I cannot imagine the agency prevailing if after the court rules one way, the agency comes back and says, we want to do it a different way. It's not the best reading of the statute. We just want to do it. They give no policy justification. I just can't imagine us upholding it. I'm assuming the policy justification and all the other stuff that would typically. Yeah, and can I ask one one follow up question, which is on your concerns about the delegation, which I take to be driving some of this under existing law, what's the decision you'd point to that elucidates that set of concerns, given that, at least in some cases, like Babbitt and other cases that have occasion Chevron deference. There hasn't been the kind of pointed analysis of the scope of the delegation in the way that your concern hypothesizes and that's not to say that it's not right to be concerned about it. It's not to say that it's not something that the Supreme Court could well be concerned with. I totally understand all of that. I'm just wondering, under the existing cases, what is the one you'd point to, or ones you'd point to, given that, as I understand Babbitt, it didn't talk about the scope of the delegation. It just applied Chevron authority because there was a delegation. I mean, because I'm not sure what exactly would answer your question. I mean, there's certainly the statutes that are quite clear. I mean, for example, the Securities Exchange Commission, which is a poet, you go out, you fill in the gaps, and this has been the way the law has been applied for decades. I don't think anybody's… I don't doubt that the statutes vary. That seems absolutely right, and that's an important consideration to take into account. I'm just understanding under the decisions, what is the decision that… It seems logical. I understand the logic of it. I totally do. I'm just trying to understand under the doctrine as we see it, what's the best place to look. I'm not… You don't have an answer. Is this court, like itself, in the preliminary junction opinion, Kansas, some of the relevant law, not just about Chevron, but also about criminal penalties? I'm not sure. I have a lot to add to this court's discussion. All right. Let me make sure my colleagues don't have further questions for you, Mr. Sturm. I do not. Oh, thank you. Thank you, Mr. Sturm. Mr. Jaffe, we'll give you three minutes for rebuttal and see where it goes. All right. Thank you. I guess, starting with the last questioning that you had on Chevron and things like that, I would just suggest reading the government's opposition to our cert petition. Right after the original case, you'll see a more full-blown version of their position on this, which I think has been pretty consistent over the cases. I would say that you hit it right on the head when you say you assume the policy justification, and I think that's exactly what's missing in this case. The agency never said, look, we understand that there's some wiggle room here, and we picked this one anyway because it does all these great things. And, in fact, when it said, by the way, here's an alternative that you could use, they said, no, we don't have authority to do that alternative because there's no wiggle room. So, for them to say, we believe this is plain meaning, but if it's Chevron, well, since we're right, it's ipso facto reasonable, that's not exercising policy discretion. That's just saying, well, we're right, so of course it's reasonable. I don't think it's quite the same. Going back to the definition of single function of the trigger, I think your conversation with my colleague has sharpened the point a little bit. And your question about what's the trigger, I think, answers a bunch of these hypotheticals. So, obviously, the Gatling gun is a good example. So, the original Gatling gun opinion was for two different patents, one for a hand-cranked Gatling gun and one for a motor-cranked Gatling gun. And originally, the agency said they're both not machine guns. But later, in the minigun opinion, said a motor-driven Gatling gun would be a machine gun. And there, I think the better reasoning is because the trigger is the on button of the motor, not the little doohickey that moves back and forth. The trigger has been translated, and that's the same answer to the autoglock. There's one button, and it keeps moving back and forth. That button is the trigger at that point, not the little doohickey that the other mechanical thing keeps moving. How do you square that understanding with your criticism of the current rule? Because your criticism of the current rule is that single function of the trigger is a mechanistic description of the actual trigger of the gun. Well, one has to understand what the trigger is. You're saying something different now. No, I'm not. I'm saying the same thing. The trigger is the piece of a gun that accepts external input. And each time external input is applied to that piece of the gun, that's a new function of the trigger. You move it. But once I've automated it, let's say I put a cam and totally enclose it so that you can never touch it again and just have a button out there. The trigger is the button. It accepts the external input, i.e., my action. And that's why the press it, it shoots, press it, it shoots, press it, it shoots is multiple functions of the trigger, regardless of what's happening inside the black box. So my hypothetical about the mechanical hand with the finger, which, you know, I assume that's similar to the autoglove, I don't know. I mean, it might look detailed at what an autoglove is. But so are you saying that if in my invention that has a mechanical index finger, that if you push the button, it just rapidly moves that finger back and forth to activate the trigger, you would agree that that is a machine gun, yes or no? I would say the trigger is the button. And yes, then it would be a single function of the trigger. Yes. But the trigger is no longer what you would traditionally think of colloquially as the trigger. But in a bump stock, the trigger is the trigger. And the thing that's making the trigger move is literally my finger inputting it through my manual forcing of the gun forward. The only thing recoil does is reset the trigger. The recoil never causes the gun to fire a second time. And you can see this in the record. Judge Henderson cited it, the Adam Kraut video, where he shows exactly what happens if you cease applying new manual input. It shoots once and stops. And that's in the record. I think we cited it in our brief, but it's also in the previous opinion. Let me ask you the kind of nerdy procedural question of with respect to this case on summary judgment and what the district court found to be undisputed facts. First of all, are you arguing here, at least I didn't see it in your brief, that the district court erroneously found a fact to be undisputed that was actually disputed? You're not saying that, are you? No, I think we all agree on the literal mechanical facts. What we disagree is with the interpretation of those facts as applied to the law, which I view as a legal question, not as a factual question. So, no, I don't think there's any meaningful fight about the physical operation of a bump stock and whether or not you need to continue manual input to cause it to bump into your finger each time. There's no dispute about that. I don't think the district court suggested there is. I think the district court, in fact, largely followed this court's earlier decision on the PI motion and just sort of accepted that decision and didn't really address the facts any further beyond that. So, no, I don't think we have a dispute about the facts in this case. I think it's an application of the law to those facts that we're fighting about. Can I ask on the hypothetical weapon that I have? We've had a lot of hypotheticals, but just to go back to the initial hypothetical weapon that I constructed, conjured up in my own mind, that weapon, the reason I was interested in that hypothetical is because that doesn't involve a reconceptualization of the trigger. So, you switch it into automatic mode, and then it also requires a pull of the conventional trigger. And then you could remove your hand, and the trigger just keeps on moving. Right. And you took the position, which I totally understand because of the way you read the statute, that that would not be a machine gun. And I'm just wondering, when you read the statute, any weapon which shoots automatically more than one shot by a single function of the trigger, it just feels to me like an ordinary English understanding of that is that, yeah, because there's a single function of the trigger. And then it's true the trigger keeps moving and the trigger has to keep moving every time in order to release the hammer. That's all true, but it's still shooting automatically more than one shot by a single function of the trigger, even if there's other functions of the trigger that happen to disseminate additional shots. So, with a better understanding of that hypothetical, having listened to you and my colleague talk about it, I don't think the trigger is functioning once you pull your finger away. That's why I sort of said you need to understand what a trigger does. It accepts external input. And that trigger is no longer accepting external inputs. It is no longer accepting my finger, causing it to move. Well, maybe a finger or a stick, whatever it is. There's some external input because there's some machine. I mean, I don't know if it's an electrical signal or what it is. I mean, it may not be a human input, but there's some, just like with a bump stock, it's actually bumping up against, it could be a stick. Well, no. So, if it were just a stick, it wouldn't keep firing unless the external input was you pushing it against the stick. Oh, yeah. There's got to be the forward pressure. But if you cause it to receive external input, I mean, obviously, if I had literally a mechanical device that I put in there and I sealed it off and then I press the button, that at some point becomes internal input. I mean, that's how every machine gun works, is with an internal mechanism that causes it to keep going. You have to sort of separate the notion of the trigger, i.e., that piece of a gun that accepts outside input from those parts inside that reset and wind up and go again and again and again. So, the hypothetical weapon I had, it would still be the same part of the weapon. It would still be the trigger that you pulled. It wouldn't be the trigger conceptually anymore. Because it wouldn't be taking my input. For subsequent shots. I'm talking about for the initial shot, it's still a function of the trigger. You're just saying for subsequent shots, you think the trigger's not functioning anymore because… There's no second function. That's right. So, for me, the single function of the trigger is, I think we said this in a brief, I read it as one and only one function of the trigger per shot. Even though, in my hypothetical, the trigger does, in fact, have to move in order to allow the firing of an additional shot. It's not… Okay. I just want to… Imagine that it just hung there flapping about. That there was some internal thing that was driving the shots, and the trigger just flapped about with it, but it wasn't accepting input. I would say that there's no further function of the trigger. It may be moving here and there and loosey-goosey, but it's not functioning as in taking external input and translating that into internal operation, which is… You could just design the weapon in a different way so it didn't have to, but I'm envisioning a weapon in which it does. And the reason I'm envisioning that weapon is because if you switched it into semi-automatic mode, it would still function the same way. You would still have to repeatedly pull the trigger in order to allow the firing of an additional round. So, mechanically, the trigger needs to move in order to release the hammer. I think you could say the trigger doesn't require external input anymore. That, I take. But to say it's not functioning at all, I'm not sure I understand, because it needs to function. It needs to move. Otherwise, the hammer's not going to be released. Not once you switch the selector. That's actually the ultimate point, is that your hypothetical of a select-fire gun, that you can switch the selector, disengages the trigger from any involvement in subsequent shots. No, that's not my hypo, because at least I don't think it is. Because once you switch it to automatic mode, it's not firing yet. You still have to pull the trigger. Oh, right, once. I understand that it takes the first, but then you take your finger away, was your hypothetical, I thought. That's right. So, it's no longer accepting input for each subsequent shot. Whereas in a bump stock, it has to accept input. Otherwise, there will not be a subsequent shot. If I did what you suggested, the bump shot fires once, and it resets, but it never fires a second time. My point is only that in the subsequent shots with the weapon that I've conjured up, and if there's a real one, tell me, but I'm assuming there's not, it still requires a movement of the trigger for an additional shot to be fired. There's not external input to the trigger. I agree with you on that. It's happening automatically, but the way I'm constructing the weapon is that it still requires a movement of the trigger for a subsequent shot, because otherwise the hammer's not going to be released. Your hypothetical is very much like a motorized gatling gun. And I think what ATF ultimately did when it did the minigun opinion is rather than worry about what happens to what we traditionally think of as the trigger, they reconceptualize the on button. Right. And I'm trying to get away from that. Well, I'm saying I don't think your hypothetical is that different. Just the on button is the trigger itself. You hit it once and go away. It's like hitting the on button for a motor going away, and it'll just keep going. And the fact that in a gatling gun, there's a cam that's driving the traditional trigger. And I don't want to beat this too much, but it's a little bit different because it's not just hitting the on button. You actually have to pull the trigger also. And what we consider to be the conventional trigger, it's meant to talk about a particular piece of the statute. But I think I understand your argument. I have one last question for you, which is the concern that's been raised a few times today about the scope of the delegation, the way that the delegations themselves have written. I just want to make sure. I didn't see that argument in your briefs. And as far as I can tell, the briefs don't cite much less quote the delegations at all. Am I right about that? I think we only cited it by reference to the government's position taken in the brief in opposition to our petition, where we said we agree that they don't have this authority. I don't know that we belabored it because, of course, we were agreeing on it, and it wasn't a great use of space, given that we seemingly agree on it. Okay, we'll take it. Can I ask one more thing? I want to make sure following up on what the chief judge was raising about delegated authority. Part of your argument is your read of the statute is the plain meaning of the current statute forecloses what the agency proposes, right? That's a starting point. Yeah. Which, of course, means there could be delegated authority, you assume, right? Even if there were delegated authority. I know, I understand. Just stay with me a minute. There could be delegated authority. And what would you, as best you can in this setting, what would you imagine would be enough to allow for you to be able to say comfortably, yes, there's delegated authority because the statute says so. What do you have in mind? I would think you would need something very much like the SEC statute, which says the agency has authority to define what fraud is. And they make rules describing what fraud is. This is important for me to understand your position. In your view, you need something that says the agency has the authority to define the limits of machine gun. Is that right? Yes, or the limits of firearms in general as defined under this statute. I mean, one could imagine a broader delegation. I, of course, would have some constitutional problems with that. But in terms of- No, no, no. Don't do that. I want you to, so I can understand your position, I want you to tell me what would be an acceptable delegation. Obviously, I can't ask you to write a statute. Constitutionally, virtually none. The delegation would be implementation only, which is what I think the agency has. So, if the question is you have to pay a fee to get your delegation- Now, why are you saying implementation only? Because that's certainly not a general rule of law. You're saying because it's a criminal? Yes, and because I think there are major questions, and I think current- I don't know. You can't even go in there. We don't know what major questions are. You say major questions doctrine. I challenge that. There is no doctrine. There are references to it. So, I don't know what you're talking about, okay? Let's leave that be. There are a few scholars who have gotten tangy because they wrote about it, but I don't know what we're talking about. What are you talking about when you say a permissible delegation? What would be required? There would be required guidance from Congress on the relevant policy choices to be made to put people in jail. I think it is the separation of powers side of the lenity doctrine that defines the narrowness with which Congress must legislate in order to provide proper guidance to an agency to then implement that legislation. And to me, that would be extremely narrow. They would need a clear statement by Congress with guiding principles that told the agency how far they could go and how far they couldn't go. Okay, and so you go tighter on delegated authority. Your answer to me on delegated authority is tighter than it would otherwise be in these other statutory settings because this is criminal. Yes. Am I right? I'm asking. I'm not telling you. I'm asking. Yes, is the answer. Yes, I think the rule of lenity is an overlay to delegation problems. Okay. I don't understand. I don't need. No, I'm done. I just, I'm trying to understand this position. Go ahead. One thing I don't understand is major questions is not a constitutional limitation. No, not at all. Because it's not even a doctrine that anyone has defined. It's two words. As long as the delegation is specific enough, that satisfies what, if we assume there's a major questions doctrine, and which I will for purposes of this question. It just requires a specific enough delegation, right? And so, but that's right. But that's a question, right? If it's specific enough, it answers the major questions. It's not that you can't delegate small things on major questions. No, my point is that my point is this. When judge Edwards asked you to specify the type of delegation that would suffice. It doesn't seem to me to be an answer to say there's no delegation that could suffice because of major questions. The delegation has to be specific enough. Right. Yeah, I mean, hopefully I thought I conveyed that as long as Congress set sufficient guide rails for the agency, that would be, that would satisfy my delegation concerns, as well as whatever you call them, that the policy concerns that put people in jail need to be decided by the legislature, not by an executive branch official. So, however, that's what I was trying to convey, that I don't care what name we put on it. I think lenity just implements that whole point. I think these other doctrines implement that whole point. But in a criminal context, I think it needs to be tighter, that the guardrails for the agency need to be tighter. It can't just be go forth and do good and criminalize those things that you think are bad. The SEC statute that allows regulations that define the scope of criminal law, that's enough in your view. Well, I would probably challenge those too, that they need more guardrails. But we've at least over the years created common law guardrails on the scope of fraud. And so if we assume Congress legislated with those guardrails in mind, then maybe it is. Yes, that to me is not an intent problem, but a specificity problem. And then we just have delegation issues. All right. Thanks. So let's suppose we agree that Chevron deference is inappropriate here. And we conclude that your interpretation of the statute and the government's interpretation of the statute are equally reasonable. They're equally plausible. Is the tiebreaker the fact that Congress did delegate to the agency to regulate, to enforce this as it deems necessary? Or however, you know, I'm paraphrasing the statute. You know, given that delegation, shouldn't the government win the tie? No, I would say lenity is the tiebreaker in that situation. Because if you assume that they just said go forth and do, you know, implement as you see fit, I think there's no guardrail there to give them guidance. If we think they're equally plausible versions that are so disparate, to me, that is Congress having failed to make a sufficient choice to put someone in jail. That would be the tiebreaker for me in that scenario. If you think they have the best interpretation of it, then they would win. The best linguistic interpretation, right? Putting aside the policy questions, the best interpretation of the language. Right. Gotcha. Okay. Nelson, my colleagues, do I have further questions for you? No. Thank you. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Wilkins, Edwards